# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DR. RICHARD L. SCHWARTZ, et al., | ) | CASE NO.  1:04CV1749 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| CNA INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.** :

This matter comes before the Court upon the Motion of Plaintiffs for Partial Summary Judgment; the Cross- Motion for Summary Judgment of Defendants, Pacific Indemnity Company and Great Northern Insurance Company (improperly designated as Chubb Group of Insurance Companies); the Cross- Motion for Summary Judgment of Defendant Transcontinental Insurance Company (improperly designated as CNA Insurance Company); and the Motion of Plaintiffs for Leave to Submit Supplemental Authority.  For the reasons that follow, the Cross- Motions of all Defendants are granted and the Motions of Plaintiffs for Partial Summary Judgment and for Leave to Submit Supplemental Authority are denied.

## I. FACTUAL BACKGROUND

Plaintiff, Richard Schwartz, M.D. ("Schwartz") and Philip Rice ("Rice") were partners in a lucrative cardiac surgical partnership for nearly a decade, when Rice unexpectedly fell prey to alcoholism.  The partnership suffered as a result and Schwartz filed a shareholder derivative action against Rice, as well as an action for dissolution of their corporations, Canton Heart Institute & Circulation, Inc., Clinical Imaging Resources, Inc., and Vein Disorder Center, Inc., in Stark County Common Pleas Case No. 92CV012.  On June 16, 1995, a jury granted judgment in favor of Schwartz and against Rice in the amount of One Million Four Hundred and Five Thousand Dollars; a judgment in favor of Canton Heart Institute & Circulation, Inc., Clinical Imaging Resources, Inc., and Vein Disorder Center, Inc. and against Rice for Four Hundred Seventy-Eight Thousand Dollars; and a judgment in favor of Rice and against Schwartz in the amount of One Hundred Twenty-Two Thousand Dollars.  Both sides appealed the judgments.

Shortly thereafter, Aultman Health Services Association ("Aultman") "held in abeyance" Schwartz's cardiac surgical privileges and procured the services of another cardiologist.  Allegedly in order to preserve his cardiac surgical practice, Schwartz and Canton Vascular Institute, Inc. filed a federal court suit against Aultman, several individual cardiologists, and two cardiology groups, claiming, *inter alia*, violations of the Sherman Anti-Trust Act.  The district judge granted summary judgment for the defendants on the federal anti-trust claims and refused to exercise jurisdiction over the state claims.  Schwartz appealed to the United States Court of Appeals for the Sixth Circuit, where the district court's ruling was affirmed.  The United States Supreme Court refused to grant a writ of certiorari.

-2-

Schwartz, in further efforts to save his dwindling assets, sued Rice multiple times for various claims relating to the dissolution of their partnership. He also re-filed the state law claims against Aultman, the individual cardiologists, and the cardiology groups, asserting tortious interference with business, breach of contract, defamation, and invasion of privacy. During the pendency of this litigation, Aultman evicted Schwartz from his hospital office and accused him of threatening to blow up the hospital. Schwartz defended the eviction action by filing for preliminary and permanent injunctive relief. The prolonged resolution of the eviction and injunction matters allegedly cost Schwartz approximately Seventy-Five Thousand Dollars in legal fees and expenses. Throughout the period from 1992 to 1998, the legal proceedings (nearly all initiated by Schwartz) cost Schwartz and Canton Vascular Institute, Inc. One Million Six Hundred Eleven Thousand Eight Hundred Twenty-Nine Dollars and Eighty-Three Cents in attorney fees and expenses.

During the pertinent time period, Schwartz, his wife, Dr. Janet Schwartz, and Canton Vascular Institute, Inc. were insured under two policies. The first, a homeowners' policy, Chubb Masterpiece Policy #11181513, was sold to the Schwartzes by Chubb & Son, Inc., a division of Federal Insurance Company, and written by Great Northern Insurance Company and Pacific Indemnity Insurance of California. The second, a Business Package Policy No. 1042963698, was provided by Transcontinental Insurance Company to Canton Vascular Institute, Inc., through its corporate officer, Richard Schwartz.

On August 12, 2004, Richard Schwartz, Janet Schwartz, and Canton Vascular Institute filed a complaint against CNA Insurance Company and Chubb Group of Insurance Companies in the Stark County Court of Common Pleas for their failure and/or refusal to

-3-

reimburse Schwartz for his litigation expenses.  On August 27, 2004, the case was removed to

the United States District Court, Northern District of Ohio, by the Chubb defendants.  The

Cross Motions for Summary Judgment followed.

## II. LAW AND ANALYSIS

### STANDARD OF REVIEW

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is

appropriate when" the pleadings, depositions, answers to interrogatories, and admissions on

file together with the affidavits, if any, show that there is no genuine issue of material fact ad

that the moving party is entitled to judgment as a matter of law."  A fact is material only if its

resolution might affect the outcome of the lawsuit under the governing law.  *Anderson v.

Liberty Lobby, Inc*., 477 U.S. 242 (1986).  The court must view all evidence and reasonable

inferences in favor of the nonmoving party, in order to determine whether or not there is a

genuine issue of material fact for trial.  *Id. at 255.*  An opponent of a motion for summary

judgment may not rely on the mere allegations of the complaint, but must set forth specific

facts showing a genuine issue for trial.  *Id. at 248.*

In Ohio, the construction of a contract is a matter of law for the court to decide.

*Latina* v. *Woodpath Dev. Co.*, 567 N.E. 2d 262, 264 (Ohio 1991).  Courts are bound by the

unambiguous terms of an insurance contract and cannot "read into the contract meaning

which was not placed there by an act of the parties."  *Motorists Mut. Ins. Co. v. Tomanski*,

271 N.E. 2d 924, 927 (Ohio 1971); See also *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins*.,

*Co.*, 993 F. Supp. 1131, 1134 (N.D. Ohio 1998) (court may not read ambiguity, doubt, or

equivocation into words of common meaning and understanding in an insurance policy).

-4-

Moreover, when language of an insurance policy has a plain and ordinary meaning, it is unnecessary and impermissible for a court to resort to construction of that language. *LaValley v. Virginia Surety Co., Inc*., 85 F. Supp. 2d 740, 743 (N.D. Ohio 2000).

In the prosecution of an insurance coverage action, the insured has the burden of demonstrating that coverage exists under the policy. *Motor Panels, Inc. v. Birmingham Fire Ins. Co. of Pennsylvania*, 1991 WL 516545 (N.D. Oh. Nov. 27, 1991)( unpublished decision)(citing *Gibbons v. Metropolitan Life Ins. Co.*, 135 Ohio St. 481 (1939)).  Then, the insurer has the burden of showing that an exclusion applies to preclude coverage. *Id*.

## THE CHUBB MASTERPIECE POLICY

The homeowners' policy issued to Richard and Janet Schwartz provides for the following grant of coverage:

> **We cover damages a covered person is legally obligated to pay for personal injury or property damage which take place anytime during the policy period and are caused by an occurrence, unless stated otherwise or an exclusion applies.  Exclusions to this coverage are described in Exclusions.**
>
> A "**covered person**" means:
> - you or a family member;
> - any other person or organization with respect to liability because of acts or omissions of you or a family member; or
> - any combination of the above.
>
> "**Damages**" means the sum that is paid or is payable to satisfy a claim settled by us or resolved by judicial procedure or by a compromise we agree to in writing.
>
> "**Personal injury**" means the following injuries, and resulting death:
> - bodily injury;
> - shock, mental anguish, or mental injury;

-5-

- false arrest, false imprisonment, or wrongful detention;
- wrongful entry or eviction;
- malicious prosecution or humiliation; and
- libel, slander, defamation of character, or invasion of privacy.

"**Bodily injury**" means physical bodily harm, including sickness or disease that results from it, and required care, loss of services and resulting death.

Ohio Personal Liability Coverage Form, p. T-1.

The policy defines "occurrence" as follows:

**Occurrence** means a loss or accident to which this insurance applies occurring within the policy period.  Continuous or repeated exposure to substantially the same general conditions unless excluded is considered to be one occurrence. *Id*. at A-1, Definitions.

The policy contains the following defense coverage provisions:

We will defend a covered person against any suit seeking covered damages for personal injury or property damage.  We provide this defense at our own expense, with counsel of our choice, even if the suit is groundless, false, or fraudulent.  We may investigate, negotiate, and settle any such claim or suit at our discretion. *Id*. at T-3.

There are a number of pertinent exclusions:

**Director's liability**.  We do not cover any damages for any covered person's actions or failure to act as an officer or member of a board of directors of any corporation or organization.  This exclusion does not apply to a not-for-profit corporation or organization, or to a condominium or cooperative association.

**Business pursuits**.  We do not cover any damages arising out of a covered person's business pursuits, investment or other for-profit activities, for the account of a covered person or others, or business property.

**Business** means any employment, trade, occupation, profession, or farm operation including the raising or care of animals.

**Professional services**.  We do not cover any damages for any covered person's performing or failure to perform professional services, or for professional services for which any covered person is legally responsible or

-6-

licensed.

**Contractual liability**. * * * We also do not cover any damages arising from contracts or agreements made in connection with any covered person's business.  Nor do we cover any liability for unwritten contracts, or contracts in which the liability of others is assumed after a covered loss.

**Covered person's or dependent's personal injury**.  We do not cover any damages for personal injury for any covered person or their dependents where the ultimate beneficiary is the offending party or defendant. * * *

*Id.* at A-1, T-5, T-6 and T-7.

The policy contains the following conditions:

**Policy Period**.  The effective dates of your policy are shown in the Coverage Summary.  Those dates begin at 12:01 a.m. standard time at the mailing address shown.  Each renewal period shall be for a similar term.  All coverages on this policy **apply only to occurrences that take place while this policy is in effect.**

*Id*. at Y-1.

In case of an accident or occurrence, the covered person shall perform the following duties that apply:
**Notification**. You must notify us or your agent as soon as possible.
**Assistance**.  You must provide us with all available information.  This includes any suit papers or other documents which help us in the event that we defend you.
**Cooperation**.  You must cooperate with us fully in any legal defense.  This may include any association by us with the covered person in defense of a claim reasonably likely to involve us.

*Id.* at Y-3.

Special conditions which supersede:

**Legal action against us.**  You agree not to bring legal action against us unless you have first complied with all conditions of this policy.  For all coverages except uninsured/underinsured motorists protection you also agree to bring any action against us within one year after a loss occurs . . .If you have a loss under liability coverage, you agree not to bring any action against us until the amount of damages you are legally obligated to pay has been finally determined after an actual trial or appeal, if any, or by a written agreement between you, us and the claimant. . .

*Id.* at Y-5.

Schwartz contends that coverage is available to him under the Chubb Masterpiece homeowners' policy for the litigation expenses and attorney fees incurred over the past eight years, in the initiation of several lawsuits against his former partner, Rice.  He insists that he was defending his professional career, his reputation in the community, and his ability to make a living as a cardiac surgeon.  Moreover, he was paying his attorneys to represent him for the personal injuries he sustained, i.e., mental anguish, wrongful eviction, defamation of character, and invasion of privacy, due to an "occurrence."  Schwartz argues that none of the policy exclusions apply.  However, if there were an applicable exclusion, Schwartz asserts that the insurers are equitably estopped from denying coverage.  His insurance agents falsely informed Schwartz that no coverage was available for legal fees and expenses; so, he retained and paid for his own counsel at significant expense.

Great Northern Insurance Company and Pacific Indemnity Insurance of California maintain that there is no coverage for Schwartz's claim; and even if coverage is found to exist, a number of exclusions mandate the denial of Plaintiffs' claim.  The policy covers damages a covered person is legally obligated to pay for personal injury or property damage which take place during the policy period and are caused by an occurrence.  An "occurrence" is a defined as a "loss or accident to which this insurance applies occurring within the policy period."  There was no loss or accident -- rather a number of lawsuits initiated by Schwartz himself, in response to which Schwartz could anticipate countersuits.  The first case was filed in 1992; but this policy was not in effect until 1994.  The "triggering event"– the collapse of the Schwartz and Rice cardiac surgery venture –  pre-dated the inception of this homeowners'

policy.

In early 2000, after consultation with counsel, Schwartz made a claim for reimbursement of legal fees and expenses.  The insured has the duty to notify the insurer "as soon as possible"; to provide all available information; and to cooperate fully in any legal defense.  An ordinary reading of  "as soon as possible" would have to mean more promptly than eight years after the legal proceedings began.  Cooperation and assistance mean nothing once appeals are exhausted and attorneys of plaintiff's own choosing, not "counsel of [insurer's] choice", have expended months upon years embroiled in litigation.

As was outlined previously, the policy does "not cover any damages arising out of a covered person's business pursuits."  In the supplemental affidavit supplied by Schwartz, he avers that "these lawsuits did not arise out of my business pursuits, but rather from Dr. Rice's alcohol induced disruption of my business pursuits" and "these cases did not arise out of my business pursuits, but rather out of alleged interference with my business pursuits."  ¶¶ 7 and 8.  Schwartz admits, then, that the damages suffered derive from his failed practice or interference with the operation of the practice and from legal efforts to keep an office and privileges at Aultman Hospital.  The business exclusion bars Plaintiffs' recovery under the Chubb policy.

## TRANSCONTINENTAL BUSINESS PACKAGE POLICY

Transcontinental provided Canton Vascular Institute a business policy, commencing on January 3, 1996, with renewals effective until July 14, 2000.

The policy provides:

**Business Liability**: We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which this insurance

applies.  We will have the right and duty to defend the insured against any "suit"seeking those damages.  However, we will have no duty to defend the insured against any "suit"seeking damages for "bodily injury" to which this insurance does not apply.

Definitions:

> "**Incident**" means either an occurrence or offense.
>> The trigger of coverage, with respect to "bodily injury" and "property damage" is an occurrence.  When coverage is triggered by an occurrence, then "incident" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions **that take place during this policy period**.

Transcontinental Exhibit "A" at 6. Definitions.

> **Who is an insured**:
>> If you are designated in the declarations as: . . . An organization other than a partnership or joint venture, you are an insured.  Your "executive officers" and directors are insureds, **but only with respect to their duties as your officers and directors. . .**

Transcontinental Exhibit "A" at C (1)(c).

This insurance does not apply to:

> **Expected or Intended Injury**: "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . .

Transcontinental Exhibit "A" at B(1)(a).

General Conditions in the event of Occurrence, Offense, Claim or Suit:

> **Duties of the Insured**.
> **In the event of an Occurrence or Offense which has not resulted in a claim or "suit"**.
>> Whenever you have information of any occurrence or offense which involves injuries or damages likely to involve this endorsement, **written notice shall be given by you, to us or to our authorized agent as soon as practical. . .**
> **In the event of claim or "suit"**.
>> **Immediate written notice shall be given by you to us** . . . Every demand, notice, summons, amended complaint or other process received by you or your representative shall be forwarded with each notice.

Transcontinental Exhibit "A" at V. - Section E.

Timeliness of Legal Action.

**Legal Action Against Us.**
No one may bring a legal action against us under this insurance unless:
- There has been full compliance with all of the terms of this insurance; and
- The action is brought **within 2 years** after the date on which the direct physical loss or damage occurred.

Transcontinental Exhibit "A" at 4(a) and (b).

Schwartz, as the lone director and shareholder of Canton Vascular Institute has brought a claim under the Business Package Policy issued by Transcontinental in 1996.  He asserts that he is entitled to reimbursement for legal fees and expenses arising out of seven years of litigation, instituted by him because of interference with his cardiac surgical practice.

Transcontinental has refused coverage on a variety of grounds.  There was no "occurrence" or "accident", as defined in the policy, which took place during the policy period – 1996 and continuing with renewals through the summer of 2000.

Schwartz, as director of Canton Vascular Institute, is an insured  – his wife, Janet, is not.  Furthermore, the various lawsuits did not arise out of Schwartz's duties as a director; rather, by his own admission, they were in defense of his practice and his reputation.  Even if the Court were to view the shareholder derivative suit as arising out of his duties in the corporation, coverage remains unavailable because suit was filed in 1992 – four years prior to the policy period.

Transcontinental's policy specifically excludes claims which are "expected or intended" from the insured's perspective.  Certainly, as the plaintiff prosecuting these many complaints, Schwartz necessarily had to anticipate counter-suits or counterclaims.  So, any defense attorney fees are not covered.

In his supplemental affidavit, Schwartz avers that he notified the insurer of his claim,

through counsel, in early 2000.  Applying the ordinary meaning of the policy terms, notice in the year 2000 of lawsuits beginning in 1992 cannot conceivably constitute "as soon as practical" or "immediate written notice."

Finally, legal action, in the form of this federal lawsuit, is untimely.  Schwartz had a duty to bring legal action within two years of the loss or damage.  He breached that duty.  On that basis, and for the above-stated reasons, coverage under the Transcontinental business package policy is barred.

## PLAINTIFFS' MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL AUTHORITY

Plaintiffs ask this Court to consider the recent New York Court of Appeals decision of *Federal Ins. Co. v. Kozlowski*, N.Y.S. 2d 397 (2005), which analyzes the insurer's obligation to cover expenses and legal fees.  Plaintiffs have neglected to explain or justify why this Court should apply New York state law to the instant case.  More importantly, *Kozlowski* is clearly distinguishable on its facts.  Tyco executive, Dennis Kozlowski, was sued by numerous stockholders for his professional misjudgments.  In *Kozlowski, supra*, the insurer attempted to retroactively rescind a policy nearly two years after the policy had been in effect, in the face of pending, undisputed claims against the insured that fell within the policy period. Specifically, Kozlowski was seeking coverage under his insurance policies for his defense and indemnity in the event those stockholders should secure judgments against him.  On the contrary, in the within case, Plaintiffs are seeking reimbursement of legal costs which were incurred by prosecuting others.  Unlike *Kozlowski*, these Plaintiffs seek coverage for claims which did not occur within the policy periods and which were not presented until well beyond

-12-

the limitations period set forth in both policies.  This Court, therefore, declines to consider or apply the analysis outlined in *Kozlowski*.

### III. CONCLUSION

Upon a thorough review of the briefs, arguments, insurance contracts, and applicable law, the Court finds that Plaintiffs have not met their burden of demonstrating coverage exists under the pertinent policies and Defendants have satisfied their burden of establishing the exclusions which preclude coverage. Therefore, Plaintiffs' Motion for Partial Summary Judgment (filed 8/12/04 in State Court) is denied; Plaintiffs' Motion (ECF DKT #43) for Leave to Submit Supplemental Authority is denied, as the supplemental authority proposed is neither applicable to the facts of this case, nor binding upon this court; the Cross-Motion of Transcontinental Insurance Company (erroneously identified as CNA Insurance Company) for Summary Judgment (ECF DKT #11 & #12 ) is granted; and the Cross-Motion of Pacific Indemnity Company and Great Northern Insurance Company (erroneously identified as Chubb Group of Insurance Companies) for Summary Judgment (ECF DKT #25) is granted.

**IT IS SO ORDERED**.

**DATE: _12/27/05_____**


**_____**
**CHRISTOPHER A. BOYKO**
**United States District Judge**
**(Signed original on file)**

-13-